**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rodney Eugene Hardy, | No. CV-18-02494-PHX-JJT |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| v. | **ORDER** |
| David Shinn, *et al.*, | |
| Respondents. | |

Before the Court is Petitioner Rodney Hardy's Motion for Temporary Stay and Abeyance. (Doc. 54.) Hardy, an Arizona death row inmate, asks the Court to stay his federal habeas proceedings and hold them in abeyance while he returns to state court to exhaust Claim 21 of his habeas petition. (*Id.*) He also asks the Court to appoint the Office of the Federal Public Defender for the District of Arizona ("FPD") to represent him in the proposed state post-conviction proceedings. (*Id.*) Respondents oppose a stay and take no position on the appointment of counsel. (Doc. 55.) The Court finds oral argument unnecessary and denies the motion for the reasons set forth below.

**I.     BACKGROUND**

Hardy was convicted of two counts of first-degree murder among other counts for the 2005 shooting deaths of his wife and her boyfriend. The jury found two aggravating factors: a prior serious offense under A.R.S. § 13-751(F)(2) and multiple homicides under (F)(8). The jury determined that Hardy's mitigating evidence was not sufficiently substantial to call for leniency and concluded that death was the appropriate sentence for

each of the murders. The Arizona Supreme Court affirmed the convictions and sentences on direct appeal. *State v. Hardy*, 230 Ariz. 281, 283 P.3d 12 (2012). Hardy unsuccessfully pursued post-conviction relief ("PCR") in state court.

On August 7, 2018, Hardy filed a statement of intent to file an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), together with a motion to appoint counsel. (Docs. 1, 3.) The Court appointed the FPD to represent Hardy. (Doc. 5.) On July 12, 2019, Hardy filed a 400-page habeas petition raising 50 claims for relief, many containing numerous sub-claims. (Doc. 22.) Respondents filed their answer on March 16, 2020, and Hardy filed his reply on July 17, 2020. (Docs. 35, 39.) On January 25, 2021, Hardy filed a notice of request for evidentiary development. (Doc. 44.) Briefing was completed on March 17, 2021. (Docs. 49, 52.)

On July 2, 2021, nearly two years after filing his petition, Hardy filed the pending motion, asking the Court to stay his habeas proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), to allow him to return to the Arizona courts and exhaust Claim 21. (Doc. 54.)

In Claim 21 Hardy alleges that his rights were violated when the "trial court denied his requests to change counsel and his counsel's motion to withdraw from the case." (Doc. 22 at 297.) At issue in the motion for new counsel was a disagreement about what defense to present at trial. Counsel's preferred course was to concede that Hardy was guilty of manslaughter. (*Id.*; *see* Doc. 54 at 2–3.) Hardy maintained he was not guilty, claiming that the shootings were in self-defense and accidental, and he so testified at trial. Counsel in his closing argument, however, contended that Hardy acted in the heat of passion and therefore was guilty of manslaughter not first-degree murder.

In support of this aspect of Claim 21 Hardy cites *Mccoy v. Louisiana*, 138 S. Ct. 1500 (2018). (Doc. 22 at 299.) In *McCoy* the Supreme Court held that a defendant's Sixth Amendment right to determine the objective of his defense is violated where counsel concedes guilt despite the defendant's express instructions to maintain his innocence.

138 S. Ct. at 1508–09. Hardy argues that "the trial court in his case should not have simply disregarded his concerns about the strategy that his trial counsel was intending to pursue and should have conducted a more probing hearing on the nature of the conflict and the breakdown of the relationship between Hardy and his attorneys." (Doc. 22 at 299.)

## II.     APPLICABLE LAW

A federal court may not "adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines*, 544 U.S. at 273 (citing *Rose v. Lundy*, 455 U.S. 509, 518–519 (1982)). In *Rhines* the Supreme Court held that "a federal district court has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." *Id.* The Court emphasized, however, that the stay and abeyance of federal habeas petitions "should be available only in limited circumstances." *Id.* at 277. The Court explained that staying a petition "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and "undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.*

The *Rhines* procedure for staying a petition applies only to petitions containing both exhausted and unexhausted claims. *See King v. Ryan*, 564 F.3d 1133, 1139–40 (9th Cir. 2009). When a claim is unexhausted, and there remains an available remedy in state court, it is appropriate for the federal court to stay the habeas proceedings if the petitioner shows (1) there was good cause for his failure to exhaust the claim first in state court, (2) the unexhausted claim is potentially meritorious, and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *Rhines*, 544 U.S. at 277–78.

In Arizona there are two avenues for petitioners to exhaust federal constitutional claims: direct appeal and post-conviction relief proceedings ("PCR"). Generally, record-based claims of trial error are raised on direct appeal, and extra-record claims are raised in PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR

proceedings. It provides, with certain exceptions, that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3); *see* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b), 32.4(a).

## III. ANALYSIS

Hardy argues that his request satisfies the conditions for a stay set out in *Rhines*. As an initial matter, Hardy asserts that "two vehicles remain to exhaust this claim in state court." (Doc. 54 at 13.) First, Hardy argues the state court must consider his claim that his conviction was obtained in violation of the United States Constitution under Rule 32.1(a). He argues that his claim meets the exception to the preclusive effect of Rule 32.2(a)(3) because it "raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant." (Doc. 54 at 13–14.) Hardy contends that the right identified in *McCoy* is a right that can only be waived personally. (*Id.* at 14.) He further argues the state court will be required to excuse his untimely claim because he has adequately explained why the failure to file a timely notice was not his fault but rather that of his attorneys. (*Id.* at 13.) In support of this argument, he cites a 2020 amendment to the Rules as set forth in Rule 32.4(b)(3)(D).[1] (*Id.*; *see* Doc. 56 at 4, 5.)

The second available remedy Hardy cites is set forth in Rule 32.1(g), which includes as grounds for relief "a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence." (Doc. 54 at 14–15.) Hardy contends that *McCoy* represented such a change in the law. (*Id.* at 15.)

### A. Hardy cannot show good cause

Hardy contends that the ineffective assistance of PCR and appellate counsel constitutes good cause for his failure to exhaust Claim 21 in state court. (Doc. 54 at 8–10.) Underpinning this argument is Hardy's assertion that *McCoy* "did not announce a new rule but recognized an old rule of constitutional law." (*Id.* at 4; *see id.* at 8.) In this context, and

---

[1] Rule 32.4(b)(3)(D) provides, "The court must excuse an untimely notice requesting post-conviction relief filed under subpart (3)(A) if the defendant adequately explains why the failure to timely file a notice was not the defendant's fault." *See* Ariz. R. Crim. P. 32.4(b)(3)(A).

- 4 -

for purposes of retroactive application, Hardy describes *McCoy* as a "logical extension of legal precedent" that existed at the time of his trial. (*Id.* at 7.)

Alternatively, and contradictorily, Hardy argues that "another reasonable excuse for failing to present this claim is that *McCoy* changed the law in Arizona." (*Id.* at 10–11.) For this purpose, and, as just discussed, to support his argument that he has an available state court remedy under Rule 32.1(g), Hardy asserts that *McCoy* was a "transformative event," a "clear break from the past," and a decision that "overrules previously binding case law." (*Id.* at 15.)

Respondents contend, among other arguments, that Hardy cannot show good cause because he waited until after the filing of his habeas petition to attempt to return to state court. (Doc. 55 at 5–8.) The Court agrees.

Hardy's delay in pursuing this claim forecloses a determination that good cause exists for issuing a stay at this point, nearly two years after he filed his habeas petition containing the unexhausted Claim 21. *See e.g., Hedlund v. Shinn*, No. CV-19-05751-PHX-DLR, 2020 WL 4933629, at *7 (D. Ariz. Aug. 24, 2020) ("Courts in this district have found good cause lacking when the petitioner filed a habeas petition before completing state court review."); *see also Hubbard v. Bell*, No. 07-CV-15392, 2009 WL 2447415, at *2 (E.D. Mich. Aug. 6, 2009) (finding no good cause where petitioner waited more than a year and a half after filing his habeas petition, and 11 months after his amended petition, to file his motion to stay and abey and did "not illustrate good cause for his failure to exhaust the claims in state court before filing his petition in federal court").

Hardy's arguments that the ineffective assistance of appellate and PCR counsel constitute good cause also fail. Good cause requires more than just a "bald assertion." *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014). Instead, a good-cause showing "turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify [the failure to exhaust]." *Id.* In *Blake* the Ninth Circuit held that ineffective assistance of PCR counsel may constitute good cause for failure to exhaust a claim of ineffective assistance of trial counsel. *Id.* at 983; *see Dixon v. Baker*, 847 F.3d 714, 720

(9th Cir. 2017). The court explained that its decision was consistent with *Martinez v. Ryan*, 566 U.S. 1 (2012), where the Supreme Court held that the ineffective assistance of PCR counsel can constitute cause for the default of a claim of ineffective assistance of trial counsel. *Id.* at 983. The *Blake* court concluded that "good cause under *Rhines*, when based on [ineffective assistance of counsel], cannot be any more demanding than a showing of cause under *Martinez*." *Id.* at 983–84.

As Respondents note (Doc. 55 at 6), however, Hardy was required to raise this claim of trial error on direct appeal. *See* Ariz. R. Crim. P. 32.2(a)(1), (a)(3) (stating a defendant is precluded from post-conviction relief on any ground "raisable on direct appeal" and any ground that was "waived . . . on appeal"); *see also McCray v. Shinn*, No. CV-17-01658-PHX-DJH, 2020 WL 919180, at *5 (D. Ariz. Feb. 26, 2020) (finding claim, "to the extent it alleges trial court error based on the record, is waived and precluded under Rule 32.2(a)(3) because McCray failed to present it to the Arizona Supreme Court on direct appeal."). Therefore, ineffective assistance of PCR counsel does not constitute good cause under *Rhines*.

It is not clear that ineffective assistance of appellate, as opposed to PCR, counsel can constitute good cause under *Rhines*. *See Sadowski v. Grounds*, 358 F.Supp.3d 1064, 1071 (C.D. Cal. 2019) (explaining that *Blake* does not "hold[] that the ineffective assistance of <u>appellate</u> counsel, as distinguished from post-conviction . . . counsel can constitute good cause for a failure to exhaust under *Rhines*"); *Allen v. Montgomery*, No. 2:19-CV-07840-GW-JDE, 2020 WL 3064444, at *3 (C.D. Cal. Feb. 10, 2020) ("[T]he Ninth Circuit has not addressed whether [ineffective assistance of appellate counsel] can satisfy the good cause requirement of *Rhines*."); *Ahumada v. Ducart*, No. CV 17-6422-JPR, 2018 WL 6265042, at *2 (C.D. Cal. Feb. 22, 2018) ("It is unclear whether ineffective assistance of appellate counsel constitutes good cause under *Rhines*."); *Avalos v. Sherman*, 2018 WL 5304855, at *5 n.10 (C.D. Cal. Sept. 10, 2018) (noting that it is "far from clear" whether ineffective assistance of appellate counsel could constitute good cause under *Rhines*) *adopted by* 2018 WL 5304777 (C.D. Cal. Oct. 24, 2018); *but see, e.g.*, *Allen v.*

- 6 -

*Montgomery*, No. 2:19-cv-07840-GW-JDE, 2020 WL 3064444, at *3–4 (C.D. Cal. Feb. 10, 2020) (explaining that the Ninth Circuit has not addressed whether ineffective assistance of appellate counsel can constitute good cause under *Rhines* but noting that "[s]everal district courts in the Ninth Circuit have found that an argument based on more than a 'bald assertion' of ineffectiveness of appellate counsel can constitute good cause.") (citing cases).

Assuming that ineffective assistance of appellate counsel may serve as good cause under *Rhines*, Hardy's assertion that appellate counsel performed ineffectively (Doc. 54 at 10) does not satisfy that standard.

To prove ineffective assistance of appellate counsel, a petitioner must show that counsel "acted unreasonably in failing to discover and brief a merit-worthy issue." *Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). Hardy acknowledges that "before *McCoy*, an Arizona attorney could concede a client's guilt over the client's objection because the matter was a point of strategy." (Doc. 54 at 11) (citing cases). Accordingly, appellate counsel did not perform ineffectively by failing to raise a claim that was not supported by state law.[2] *Cf. United States v. Zamudio*, 787 F.3d 961, 966 (9th Cir. 2015) (explaining that attorneys are "not require[d] . . . to make arguments based on cases that have not yet been decided"); *see also Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) (holding that "failure to raise untenable issues on appeal" does not constitute ineffective assistance); *Miller v. Kenney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (explaining that appellate counsel does not perform ineffectively by declining to raise a weak issue on appeal).

Even if, as Hardy also suggests (Doc. 54 at 10), a *McCoy*-type claim was available, he has not demonstrated that appellate counsel's failure to raise such a claim constituted ineffective assistance. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (holding that appellate counsel is not under "a duty to raise every 'colorable' claim suggested by a

---

[2] Notably, Hardy did not raise a claim in his habeas petition alleging that appellate counsel performed ineffectively with respect to this issue, nor did he raise such a claim in state court.

- 7 -

client"); *Miller*, 882 F.2d at 1434; *see also Wood v. Ryan*, 268 F.Supp.3d 297, 300 (D. Mass. 2017) (finding appellate counsel's performance was not ineffective for "good cause" purposes where omission of a "colorable" claim was not objectively unreasonable under deference accorded to counsel's judgment). Hardy's assertions about appellate counsel's performance fall short of demonstrating that the *McCoy* claim was clearly stronger than the claims appellate counsel did raise. *See Robbins*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Barnes*, 463 U.S. at 754.

Ineffective assistance of appellate counsel does not establish good cause for Hardy's failure to raise this claim in state court.

**B.     The record indicates that Hardy engaged in intentionally dilatory litigation tactics.**

Respondents also argue that Hardy "may be engaging in dilatory tactics." (Doc. 55 at 8.) Again, the Court agrees.

The delays noted above suggest that Hardy has engaged in dilatory litigation tactics. *See Allen v. Scriber*, 392 F.App'x. 565, 567 (9th Cir. 2010) ("[Petitioner] has failed to demonstrate that he acted diligently between his conviction and filing his federal habeas petition to exhaust his unexhausted claims. The same facts, which [he] knew at his conviction and sentencing, are the basis for his exhausted and unexhausted claims. Yet he delayed over two and a half years in pursuing his unexhausted claims."); *Thompson v. Quarterman*, 292 F.App'x 277, 295 (5th Cir. 2008) ("Thompson does not explain why he did not file his motion for a stay until several months after filing his federal habeas petition."); *Smith v. Koenig*, No. 219CV01650PSGAFM, 2019 WL 3255177, at *3 (C.D. Cal. June 5, 2019) (finding petitioner engaged in dilatory litigation where "[t]he record indicates that Petitioner knew about the factual and legal basis for his ineffective assistance of counsel claim in August 2016 or shortly thereafter. Yet, Petitioner did not present this claim to any state court until February 28, 2019, the same date on which he filed this federal action."), *report and recommendation adopted*, No. 219CV01650PSGAFM, 2019 WL 3255160 (C.D. Cal. July 11, 2019); *Gellock v. Martel*, No. 217CV1911MCEKJNP, 2018

WL 2096879, at *4 (E.D. Cal. May 7, 2018) (finding petitioner dilatory due to "inactivity" in state court, noting "the record demonstrates that petitioner chose to file motions and other documents in this court rather than exhaust his state court remedies"); *Rush v. Montgomery*, No. CV 12-4601-JAK JEM, 2013 WL 8182503, at *30 (C.D. Cal. Dec. 13, 2013) (finding petitioner failed to act diligently where he did not file his motion for a stay "until approximately one and a half years after he filed his Petition"), *report and recommendation adopted sub nom. Rush v. Janda*, No. CV 12-4601-JAK JEM, 2014 WL 1329150 (C.D. Cal. Apr. 2, 2014).

Hardy counters that he could not have raised Claim 21 in state court earlier because he did not have an available remedy until the enactment of the 2020 amendment to the Rules of Criminal Procedure which, in Rule 32.4(b)(3)(D), excuses the failure to provide timely notice of a claim where the defendant explained that the failure was not his fault. (Doc. 56 at 4, 5.) This argument is unconvincing given Hardy's assertion that he has a second available remedy under Rule 32.1(g) because *McCoy*, which was handed down in 2018, represented a significant change in law. With that avenue available, nothing required Hardy to wait until mid-way through 2021, three years after *McCoy*, to seek relief in state court. *See Hedlund*, 2020 WL 4933629, at *8 (finding no good cause where "[t]he change in law on which Hedlund's claim is premised went into effect nine months before he raised his challenge in state court. The factual and legal bases for the claim were available well before Hedlund filed his second-in-time habeas petition let alone his successive PCR petition"). Hardy's attempt to distinguish *Hedlund* (Doc. 56 at 4) fails for the same reason. According to Hardy's own argument, there was no impediment to seeking relief in state court under Rule 32.1(g) based on the significant change in law represented by *McCoy*.

In addition, Hardy's delay of two years in this Court, waiting until several months after briefing on his petition and his request for evidentiary development were completed, is suggestive of dilatory tactics.

Replying to Respondents' suggestion that he has engaged in dilatory litigation tactics, Hardy first argues that he "filed all documents according to this Court's timeline"

and that filing the motion for a stay during the briefing period would have "risked the perception that he was seeking to delay compliance with the scheduling order." (Doc. 56 at 5.) These statements require some context, as Hardy sought, and was granted, at least one deadline extension with respect to each of his filings, resulting in a total delay of almost 10 months from the Court's original scheduling order. (*See* Docs. 20, 21, 36, 37, 40, 41, 42, 43, 50, 51.) Concern about the perception that he was delaying the briefing schedule does not appear to have been a motivating factor during that period. Instead, knowing the standards governing a *Rhines* stay, Hardy risked a finding that unwarranted delay in seeking relief would suggest dilatory litigation tactics.

Hardy next attempts to justify his delay in returning to state court by arguing that he "notified the Court and Respondents that he intended to seek a *Rhines* stay in prior filings." (Doc. 56 at 2.) Hardy cites two filings for the proposition that he previously notified the Court of his intention to move for a *Rhines* stay. (*Id.*) In the first, his reply to Respondents' answer to his habeas petition, Hardy indicated that he "*reserves the right* to return to state court under the stay and abeyance procedure outlined in *Rhines*. . . ." (Doc. 39 at 177) (emphasis added). The second filing, Hardy's reply to the response to his notice of request for evidentiary development, contains no mention of an upcoming request for a *Rhines* stay but merely refers to page numbers from the earlier filing, one of which contains the reference to reserving the right to file for a *Rhines* stay. (*See* Doc. 52 at 23.) In any event, the fact that Hardy "reserved his right" to pursue a *Rhines* stay at some point does not demonstrate that he had good cause for not pursuing a *McCoy*-type claim earlier, nor does it foreclose a finding that his pursuit of the claim was dilatory. To the contrary, Hardy argued in his reply to Respondents' answer that he had available remedies in state court for his *McCoy* claim (Doc. 39 at 175–76), yet he let another year pass before he moved for a stay to pursue the claim.

Granting a stay in these circumstances, where there is no credible justification for Hardy's prolonged delay in seeking a stay, implicates the concerns identified in *Rhines*. 544 U.S. at 277–78 (noting that "capital petitioners might deliberately engage in dilatory

tactics to prolong their incarceration and avoid execution of the sentence of death"). It "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and "undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.*

## IV. CONCLUSION

Hardy's request for a stay under *Rhines* is denied because he has not shown good cause for his failure to exhaust his *McCoy* claim in state court and because there are indications he has engaged in dilatory litigation tactics.[3] *See Rhines*, 544 U.S. at 277–78.

Having determined that Petitioner is not entitled to a *Rhines* stay, the Court finds it is not appropriate to authorize the FDP to represent him in state court. *See Harbison v. Bell*, 556 U.S. 180, 190 n.7 (2009) ("[A] district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation."); *see also McCray*, 2020 WL 919180, at *9; *Johnson v. Ryan*, No. CV-18-00889-PHX-DWL, 2019 WL 1227179, at *2 (D. Ariz. Mar. 15, 2019).

Accordingly,

**IT IS HEREBY ORDERED denying** Hardy's motion to stay his habeas proceedings and his request for authorization of the FPD to represent him in state PCR proceedings. (Doc. 54.)

Dated this 7th day of September, 2021.

Honorable John J. Tuchi
United States District Judge

---

[3] Reaching these conclusions, the Court need not address the remaining prong under *Rhines*, whether the claim is potentially meritorious.